IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:21-cv-00947-RMR-STV

GHADEER SMITHER and JEFFERY SMITHER,

    Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

    Defendant.

## ORDER

Pending before the Court are Defendant's Motion to Strike or Exclude Plaintiff's Non-Retained Expert Witnesses Richard Estess and David Day, ECF No. 28, and Defendant's Motion for Summary Judgment, ECF No. 30. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED, and the Motion to Strike is DENIED AS MOOT.

### I.    BACKGROUND[1]

Defendant American Family Insurance Company ("American Family") issued a homeowners insurance policy (the "Policy"), which covered sudden and accidental direct physical loss (except for excluded losses) to Plaintiffs' home in Greenwood Village,

---

[1] The Court relies on the parties' statements of fact in their summary judgment briefing. *See* ECF No. 30 at 1–7; ECF No. 32 at 1–4; ECF No. 33 at 1–2. The parties have not raised disputes with these facts. *See* ECF No. 32 at 3 ("Plaintiffs agree with the majority of the relevant facts as set forth by Defendant."); ECF No. 33 at 1 ("Plaintiffs do not dispute or contradict any statement of fact advanced in Defendant's Motion.").

Colorado (the "Property") occurring during the policy period. On June 1, 2019, Plaintiffs Ghadeer Smither and Jeffery Smither were at home and observed a hailstorm at the Property. Between one or two weeks and a few months, Plaintiffs noticed leaking in their sunroom. ECF No. 32 at 3; ECF No. 32-5 at 4.[2] On March 22, 2020—295 days (approximately 9 months) after the hailstorm—Plaintiffs had roofing contractor Richard Estess assess the damage to the Property. As a result of Mr. Estess's March inspection, Plaintiffs believed that the damage was the result of the hailstorm that took place the previous June, and Plaintiffs filed a claim with American Family on the same day of Mr. Estess's inspection (March 22, 2020).

American Family's adjuster, Mr. Torres, inspected the Property on March 25, 2020. Mr. Torres found hail damage to screens, glazing beads, and shed roof shingles that amounted to an actual cash value of $1,922.35—less than the $2,000 deductible provided for in the Policy. On April 16, 2020, Mr. Estess provided American Family with a repair estimate amounting to $386,480.74, including $264,425 for a complete tear down and rebuild of the sunroom. ECF No. 30 ¶ 6; ECF Nos. 30-6, 30-7. American Family retained a third-party engineer, Tim Phelam, from Knott Laboratory, LLC to inspect the property on June 18, 2020. Mr. Phelam issued a report on June 25, 2020, finding that:

- Shingle roofing system of the detached shed showed evidence of hail damage;

- The indentations of the sunroom's metal framing were not consistent with hail damage, but the glazing beads of the windows showed

---

[2] The Court cites to page numbers corresponding with the ECF filing stamp, rather than the page numbers of the underlying documents.

2

- historical deterioration exacerbated by hail over the life of the material;

- The Property's roof was not dented by hail damage;

- The water infiltration system of the sunroom was consistent with historical and ongoing deficiencies.

ECF No. 30 ¶ 8 (citing ECF No. 30-9 at 13).

On July 13, 2020, American Family sent a partial denial letter to Plaintiffs, explaining that Mr. Phelam's report indicated that the damage to the dwelling's roof and sunroom was not from hail and also explaining that the wear and tear to the framing of the sunroom was not covered under the Policy. *Id.* ¶ 9 (citing ECF No. 30-10). On September 15, 2020, Plaintiffs' counsel emailed American Family a letter of representation and a legal demand requesting $386,480.74, plus attorneys' fees. *Id.* ¶ 10 (citing ECF No. 30-11). During ensuing communications between Plaintiffs' counsel and American Family between September of 2020 and March of 2021, Plaintiffs' counsel sent no new information other than Mr. Estess's repair estimate to support Plaintiffs' demand, and American Family explained in those communications that, having received no new information, it had received nothing that would allow for reconsideration of the denial of payment sent on July 13, 2020.

On March 3, 2021, Plaintiffs filed a Complaint in Arapahoe County District Court, ECF No. 6, and on April 2, 2021, Defendant removed the action to this Court, ECF No. 1. Plaintiffs bring claims against Defendant for (1) breach of contract, (2) unreasonable delay or denial of payment of a claim for insurance benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 1116, and (3) bad faith breach of insurance contract. ECF No. 6 ¶¶ 28–

43. This matter was reassigned to the undersigned, upon her appointment to the bench, on July 6, 2021. ECF No. 20. Defendant's Motion to Strike was filed on March 28, 2022, ECF No. 28, and its present Motion for Summary Judgment was filed on April 19, 2022, ECF No. 30. The motions are fully briefed and ripe for review.

## II.   JURISDICTION AND APPLICABLE LAW

This action is before the Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332. Plaintiffs are citizens of Colorado, and Defendant American Family is a citizen of the state of Wisconsin. *See* ECF No. 1 ¶¶ 2–3; ECF No. 1-2 at 1; ECF No. 6 ¶¶ 1–2, 4. Therefore, there is complete diversity among the parties. *See* 28 U.S.C. § 1332(a). Further, the amount in controversy exceeds $75,000. *See id.*; *see also* ECF No. 1 ¶ 4; ECF No. 1-3 at 1; ECF No. 6 ¶ 13.

Both parties have applied Colorado law to the substantive claims in the Motion for Summary Judgment, and the Court agrees that Colorado law applies. A federal district court sitting in diversity must apply the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009). Therefore, the Court applies Colorado choice of law principles to this case. "Under Colorado choice-of-law rules, an insurance contract is governed by the law of the state with the most significant relationship to the insurance contract." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). The Policy insures property located in Greenwood Village, Colorado. ECF No. 6 ¶ 7. The parties have not specified where the contract was entered into, nor have they pointed the Court to any choice-of-

law clause in the Policy, but the parties, themselves, have applied Colorado law.  *See* ECF No. 30 at 8–16; ECF No. 32 at 6–8; ECF No. 33 at 5–6.  The Court likewise finds that Colorado law controls.  *See, e.g.*, *Advantage Homebuilding, LLC v. Maryland Cas. Co.*, 470 F.3d 1003, 1007 (10th Cir. 2006) ("Although the record on appeal does not indicate where the insurance contract at issue was entered into, the parties agree that Kansas law controls (and thus, presumably, the contract was entered into in Kansas)."); *see also, e.g.*, *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009) ("We assess the policy under Colorado law, which the parties agree govern their diversity contract dispute.").  Therefore, the Court, sitting in diversity, applies Colorado law to this dispute.

## III.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "A fact is 'material if under the substantive law it is essential to the proper disposition of the claim.'"  *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)); *see also Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248; *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  "[T]he dispute is 'genuine' if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997); *see also Anderson*, 477 U.S. at 248.  "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

"[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  However, "the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings" at this stage.  *Adler*, 144 F.3d at 671.  If the movant carries "the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law," then "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Id.* at 670–71.

Ultimately, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251–52.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249–50 (citations omitted).

## IV.     ANALYSIS

### A.     Breach of Contract Claim

The parties' disputes regarding Plaintiffs' claim for breach of insurance contract primarily center around first, whether Plaintiffs have carried their burden to establish the nature and extent of the loss that they are claiming and, second, whether Plaintiffs breached the Policy's prompt notice requirement such that American Family is relieved from providing coverage here.  Regarding the first argument, although Defendant's Motion to Strike or Exclude Plaintiff's Non-Retained Expert Witnesses Richard Estess and David Day, ECF No. 28, is pending, even if the Court were to deny that motion and allow the testimony of Richard Estess and David Day, it would likely find, as Defendant argues, that Plaintiffs have not sufficiently established that hail damage was the cause of loss to such an extent that an entire sunroom replacement would be covered by the Policy.  *See* ECF No. 30 at 9–10.  However, the Court need not reach this argument because, for the following reasons, it finds that American Family's coverage obligation is excused in light of Plaintiffs' failure to comply with the Policy's prompt notice requirement.

The Policy provides, in pertinent part, the following "Duties After A Loss":

> **You**, any **insured**, and any person or entity claiming coverage under this policy must:
>
> a. give **us** prompt notice;
>
> b. allow **us** and **our** representatives to immediately inspect all damaged property;
>
> . . . .
>
> **We** have no duty to provide coverage under this policy if **you** or any person or entity claiming coverage under this policy fails to perform these duties. These duties after a loss do not waive any of **our** rights.

7

ECF No. 30-1 at 31–32 (emphasis in original).  Although Plaintiffs admit that they were at home and observed the hailstorm that occurred at the Property in June of 2019, they did not have a roofing contractor examine the Property and did not file a claim with American Family until 295 days (approximately 9 months) later.

"[P]ursuant to Colorado law, an insured's failure to comply with his or her first-party insurance policy's prompt notice provision prevents his or her recovery."  *Cherry Grove E. II Condo. Assoc., Inc. v. Philadelphia Indem. Ins. Co.*, No. 16-cv-02687-CMA-KHR, 2017 WL 6945038, at *3, *5 (D. Colo. Dec. 20, 2017) (Arguello, J.) (applying Colorado law) (collecting cases).  Courts in this District have applied this rule to bar coverage in the context of property insurance disputes arising from hail damage.  *See, e.g.*, *id.*; *Grill House, LLC v. Berkshire Hathaway Homestate Ins. Co.*, No. 20-cv-2108-WJM-KLM, 2022 WL 1487575, at *3–5 (D. Colo. May 11, 2022) (Martínez, J.); *656 Logan St. Condo. Assoc., Inc. v. Owners Ins. Co.*, 389 F. Supp. 3d 946, 956 (D. Colo. 2019) (Martínez, J.).  The Court agrees with these interpretations of Colorado law and concludes that, under the plain language of the Policy, the failure to "give . . . prompt notice" after a loss relieves American Family from the duty to provide coverage.  *See* ECF No. 30-1 at 31–32.

Plaintiffs argue, first, that "[n]owhere in any of Defendant's exhibits – including its' [sic] claim resolution letter, does Defendant ever say that the date Plaintiffs made the claim somehow interfered with Defendant's investigation."  ECF No. 32 ¶ 15.  However, Judges Arguello and Martínez have both predicted that the Colorado Supreme Court would conclude that no showing of prejudice to the insurance company is necessary for the Court to conclude that an insured's failure to comply with the prompt notice provision

8

relieves the insurer from its coverage obligation in the context of a dispute over coverage of property damage arising from a hailstorm. *Cherry Grove*, 2017 WL 6940538, at *4–5 (citing *Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 289–90 (Colo. 1981), *overruled as to late-notice liability insurance cases by Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 647 (Colo. 2005)); *656 Logan St.*, 389 F. Supp. 3d at 956; *Grill House*, 2022 WL 1487575, at *5 n.3; *see also Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020) ("When Colorado law has not addressed the specific issue before us, our task is to predict how the Colorado Supreme Court would rule."). The Colorado Court of Appeals has recently agreed that "the traditional approach," in which "Colorado courts did not consider insurer prejudice in late-notice cases, no matter the type of insurance policy involved . . . . [would] still appl[y] to the notice provision in [a] homeowners' insurance policy" involved in a dispute over property damage from a hailstorm. *Gregory v. Safeco Ins. Co. of Am.*, 514 P.3d 971, 972, 974, 976–79 (Colo. App. 2022) (noting that "this case may present an opportunity for our supreme court to provide clarity on this question").

On the other hand, then-Chief Judge Marcia S. Krieger has disagreed and predicted that the Colorado Supreme Court **would** require a showing of prejudice to the insurance company in "the first-party casualty insurance context." *See Hiland Hills Townhouse Owners Assoc., Inc. v. Owners Ins. Co.*, No. 17-CV-1773-MSK-MEH, 2018 WL 4537192, at *6 (D. Colo. Sept. 20, 2018). The Colorado Court of Appeals noted in *Gregory* that the Colorado Supreme Court has imposed a rule requiring the showing of prejudice to the insurer in order to "allow[] insureds to avoid strict enforcement of a notice

9

provision for public policy reasons" in the context of certain types of insurance policies. 514 P.3d at 973 (quoting *Craft v. Philadelphia Indem. Ins. Co.*, 343 P.3d 951, 959 (Colo. 2015)). Nonetheless, the Court is persuaded by the careful analysis provided in *Cherry Grove* and *656 Logan Street*, as well as the Colorado Court of Appeals' more recent holding on this issue in *Gregory*, which addressed the specific context of homeowners insurance policies. Therefore, the Court concludes that a showing of prejudice to the insurance company is not required to enforce the Policy's "prompt notice" requirement in this context, and American Family was not required to show that the timing of Plaintiffs' claim "somehow interfered with Defendant's investigation" for the prompt notice provision to apply. *See* ECF No. 32 ¶ 15.

Second, Plaintiffs argue that "[w]hat constitutes a reasonable time to make a claim and give notice to an insurance company is ordinarily a question for the jury" and that "[m]aking the claim within a year of the storm and after hail damage had been confirmed by an expert is not unreasonable." *Id.* ¶ 16 (citing *Certified Indem. Co. v. Thun*, 439 P.2d 28, 30 (Colo. 1968)); *id.* ¶ 18. However, the Colorado Supreme Court held in *Thun* that, although "[o]rdinarily, it is a question for the factfinder as to what constitutes a reasonable time for the giving of the notice as provided in insurance policies[,] . . . . when facts are undisputed and only one inference can be drawn therefrom, it is a question of law for the court." 439 P.2d at 30; *see also, e.g.*, *Grill House*, 2022 WL 1487575, at *3 (same). Further, Plaintiffs cite no authority to support their contention that making a claim within one year is a reasonable time frame. In *Thun*, the Colorado Supreme Court held that a delay of 73 days was "an unreasonable delay." 439 P.2d at 31. The Colorado Supreme

Court has also held that a delay of 5 months "did not substantially comply with the notice provisions" in the policy and that "the trial court properly found that the notice was untimely as a matter of law and that the . . . delay was unreasonable." *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 226 (Colo. 2001). The Colorado Court of Appeals has held that a delay of 7 months for the insured to notify the insurer of a claim "waived the[ insured's] right to recover." *United Servs. Auto. Ass'n v. Allstate Ins. Co.*, 662 P.2d 1102, 1104 (Colo. App. 1983). Here, as stated, there was a 295-day (or approximately 9-month) delay between the date of the hailstorm and Plaintiffs' claim to American Family. Given that Colorado courts have considered shorter periods of time to be unreasonable and not prompt, the Court finds that the time frame here does not constitute a "prompt notice" under the Policy as a matter of law.

The fact that Plaintiffs submitted their claim to American Family on the same day that Mr. Estess investigated the property makes no difference. "[T]he key question is when the 'insured, **with reasonable diligence, can ascertain** that the [the property has been damaged by a covered event].'" *Grill House*, 2022 WL 1487575, at *4 (emphasis added) (quoting *656 Logan St.*, 389 F. Supp. 3d at 950). Plaintiffs have provided no reason why they could not have ascertained any earlier than Mr. Estess's March 2020 investigation that the claimed damage to the Property may have been caused by the June 2019 hailstorm. The *Thun* Court noted that when an insured fails to notify an insurer within a reasonable time, the insured must provide a "justifiable excuse or extenuating circumstances explaining the delay." 439 P.2d at 30; *see also, e.g.*, *Cherry Grove*, 2017 WL 6945038, at *5–6 (same). "Unless the delay is so explained, the insurer cannot be

11

held liable under the insurance contract." *Thun*, 439 P.2d at 30. Plaintiffs note that they "waited until multiple people had looked at the roof, and Mr. Estess confirmed the hail damage, to make the claim on March 22, 2020." ECF No. 32 ¶ 18. However, Plaintiffs have still not provided a "justifiable excuse" why "multiple people" could not have "looked at the roof" in a more "prompt" manner, nor have they argued that "multiple people . . . look[ing] at the roof" constitutes "extenuating circumstances explaining the delay." *See Thun*, 439 P.2d at 30.

Given the Plaintiffs' failure to provide prompt notice after the loss and failure to provide any excuse for or extenuating circumstances explaining the delay, under the plain language of the Policy, American Family "ha[s] no duty to provide coverage." ECF No. 30-1 at 32. Therefore, American Family is entitled to summary judgment on Plaintiffs' breach of contract claim.

### B. Statutory Bad Faith Claim

"It is settled law in Colorado that a bad faith claim must fail if . . . coverage was properly denied and the plaintiff's only claimed damages flow from the denial of coverage." *MarkWest Hydrocarbon*, 558 F.3d at 1193 (collecting cases from the Colorado Court of Appeals); *see also American Fam. Mut. Ins. Co. v. Hansen*, 375 P.3d 115, 117 (Colo. 2016) ("American Family's denial of Hansen's claim in reliance on the unambiguous insurance contract was reasonable, and American Family cannot be held liable under sections 10-3-1115 and -1116 for statutory bad faith."). Given that the Court finds that American Family did not breach the insurance contract here, *see supra* Section IV.A., Plaintiff's claims for unreasonable delay or denial of payment of a claim for

insurance benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 1116 and bad faith breach of insurance contract, ECF No. 6 ¶¶ 33–43, which "flow from the denial of coverage," also fail as a matter of law and must be dismissed. *See MarkWest Hydrocarbon*, 558 F.3d at 1193.

V.     CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment, ECF No. 30, is GRANTED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE. Accordingly, Defendant's Motion to Strike or Exclude Plaintiff's Non-Retained Expert Witnesses Richard Estess and David Day, ECF No. 28, is DENIED AS MOOT.

DATED: February 7, 2023

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge